UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| REX GARD,<br><br>        Plaintiff,<br><br>  vs.<br><br>BOB DOOLEY, CHIEF WARDEN, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; SUSAN JACOBS, ASSOCIATE WARDEN, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY; MURIEL NAMINGA, LAUNDRY SUPERVISOR, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY; ANDRA GATES, SUPERVISOR, DOH, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; KELLY SWANSON, SUPERVISOR, DOH, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY; JENIFER BEMBOOM, CBM FOOD SERVICE, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY; JOHN TREWIELLAR, CBM FOOD SERVICE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; BARRY SCHROETER, CBM FOOD SERVICE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; JENIFER STANWICK, DEPUTY WARDEN, INDIVIDUAL AND OFFICIAL CAPACITY; REBECCA SCHEIFFER, ASSOCIATE WARDEN, INDIVIDUAL AND OFFICIAL CAPACITY; LELAND TJEERDSMA, MAJOR, INDIVIDUAL AND OFFICIAL CAPACITY; TRAVIS TJEERDSMA, UNIT STAFF, INDIVIDUAL AND OFFICIAL CAPACITY; TAMMY DEJONG, UNIT STAFF, INDIVIDUAL AND OFFICIAL CAPACITY; RANDY STEVENS, PROPERTY OFFICER, INDIVIDUAL AND OFFICIAL CAPACITY; CORPORAL CROPPER, CORPORAL, INDIVIDUAL AND OFFICIAL CAPACITY; RANDY MILNE, CORRECTIONS OFFICER, INDIVIDUAL AND OFFICIAL | 4:14-CV-04023-LLP<br><br><br><br><br>**<u>ORDER ON MOTIONS:</u>**<br><br>PLAINTIFF'S MOTION TO TURN OVER DISCOVERY MATERIALS TO STAFF ATTORNEY<br>[DOCKET NO. 98]<br><br>PLAINTIFF'S MOTION TO INVOKE RULE 56(D) [DOCKET NO. 99 & 105]<br><br>PLAINTIFF'S MOTION TO APPOINT A MEDICAL EXPERT AND FOR A MEDICAL EXAMINATION<br>[DOCKET NO. 100 & 106]<br><br>PLAINTIFF'S FOURTH AND FIFTH MOTIONS FOR APPOINTMENT OF COUNSEL<br>[DOCKET NOS. 101 & 121]<br><br>PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT<br>[DOCKET NO. 108]<br><br>PLAINTIFF'S MOTION FOR SANCTIONS<br>[DOCKET 114]<br><br>PLAINTIFF'S MOTION FOR COURT ORDER<br>[DOCKET 116] |

CAPACITY; JESSICA LUKE, OFFICE
STAFF, DOH, INDIVIDUAL AND
OFFICIAL CAPACITY;  DOC STAFF,
UNKNOWN AT THIS TIME,
INDIVIDUAL AND OFFICIAL
CAPACITY; AND  CBM FOOD
SERVICES EMPLOYEES, UNKNOWN
AT THIS TIME, INDIVIDUAL AND
OFFICIAL CAPACITY;

                    Defendants.

## INTRODUCTION

This matter is before the court on plaintiff Rex Gard's amended

complaint pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities

Act ("ADA"), 42 U.S.C. §§ 12131 – 12165.  See Docket No. 55.[1]  The district

court, the Honorable Lawrence L. Piersol, referred this matter to this

magistrate judge for the resolution of non-dispositive motions and for

recommended dispositions on dispositive motions.  This referral was made

pursuant to 28 U.S.C. § 636(b)(1) and the October 16, 2014, standing order of

the Honorable Karen E. Schreier, district court judge.  Nine motions are

pending and eight of them are addressed by this order.[2]

## FACTS

The background of the instant lawsuit is that Mr. Gard, an inmate at a

South Dakota state prison, alleges defendants failed to give him special

---

[1] Mr. Gard's original complaint (Docket 1) was filed on February 13, 2014.  He
filed his amended complaint (Docket 55) on November 25, 2014 after the court
granted him permission to do so.

[2] The defendants have moved for summary judgment (Docket 86).  Mr. Gard
has not yet filed his response to that motion.

diabetic socks and diabetic shoes, which were necessitated  by Mr. Gard's
medical condition—insulin-dependent diabetes.  He also alleges defendants
have refused to provide him with a diabetic diet.  Mr. Gard also alleges he
needs prescription glasses but defendants have refused to give him a pair of
glasses that fit his head.  Each of these allegations form the basis for
Mr. Gard's assertion that defendants have been deliberately indifferent to his
serious medical needs in violation of the Eighth Amendment to the United
States Constitution.  See Docket No. 1 at pp. 2-8.

    In addition, Mr. Gard alleges defendants have violated Title II of the ADA
by refusing to give him a specialized diet, denying him access to particular
religious ceremonies, the law library, the day hall, the recreation yard, and the
restrooms.  See Docket No. 1 at p. 9. The district court screened Mr. Gard's
complaint and found Mr. Gard's complaint set forth claims sufficient to survive
initial scrutiny under 28 U.S.C. § 1915.  See Docket No. 11.  The court
therefore ordered the complaint and summonses to be served on defendants.
Defendants then duly filed an answer.  See Docket No. 27.

    On July 2, 2014, Mr. Gard moved to file an amended complaint, and the
district court granted the motion.  Docket 34 & 44.  Mr. Gard moved for extra
time to file his amended complaint (Docket 45) and the district court granted
that motion as well (Docket 46).  Mr. Gard filed yet another motion for an
extension of time to file his amended complaint (Docket 50), and the district
court granted the motion (Docket 53).  Mr. Gard filed the amended complaint
(Docket 55) on November 25, 2014.   His amended complaint re-alleged his

§ 1983 deliberate indifference and ADA claims based upon Mr. Gard's diabetic condition, (Docket 55, ¶¶ 24-84) and added claims based upon what Mr. Gard perceives to be the defendants' retaliatory conduct which has occurred since the date Mr. Gard filed his original complaint.  Docket 55, ¶¶ 85-114.

On April 7, 2015, the defendants moved for summary judgment on all claims which are based upon 42 U.S.C. § 1983.  See Docket 86, 87 & 88.  The defendants assert that as to each of Mr. Gard's claims based upon § 1983, they are entitled to qualified immunity.  See Docket 88.  Mr. Gard has moved for several extensions of time to respond to the defendants' motion for summary judgment, (see Docket Nos. 91, 93, 119) and this court has granted each motion.  See text order following Docket No.91, Docket No. 95, and Docket No. 120.  The order granting Mr. Gard's final motion to extend cautioned, however, that no further motions to extend would be granted and his response must be filed by December 30, 2015.  Docket 120.

Mr. Gard filed a flurry of other motions following the defendants' motion for summary judgment. Mr. Gard has intimated in a letter to the district court (Docket 123) that he believes he cannot respond to the defendants' summary judgment motion unless these outstanding motions are ruled upon.  The following is the court's ruling on the outstanding motions.

## DISCUSSION

### A.  Mr. Gard's Fourth and Fifth Motions to Appoint Counsel—Docket Nos. 101 & 121.

Mr. Gard filed three previous motions to appoint counsel on April 16, 2014, January 26, 2015, and March 23, 2015.  See Docket Nos. 14, 63 and 78.

4

The district court denied the first motion, and this court denied the second and third motions.  See Docket Nos. 44, 75 and 80.  The district court and this court found the issues in this case were not factually complex and that Mr. Gard was adequately able to present his claims.  Id.

"Indigent civil litigants do not have a constitutional or statutory right to appointed counsel." Davis v. Scott, 94 F.3d 444, 447 (8th Cir. 1996).  The factors relevant to evaluating a request for appointment of counsel include "whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim." Id.

This case is not legally or factually complex.  Furthermore, the district court set forth the law governing Mr. Gard's Eighth Amendment and ADA claims in its screening opinion.  See Docket No. 11.  In addition, the court has ruled on or been referred four separate cases in which Mr. Gard has represented himself.  See Gard v. Kaemingk, Civ. No. 13-4062; Gard v. Dooley, Civ. No. 14-4023; Gard v. Dooley, Civ. No. 14-4179; and Gard v. Dooley, Civ. No. 14-4183.  The court, from first-hand observation of Mr. Gard's representation of himself, finds he is adequately able to articulate his claims and argue legal precedent.

In his fourth motion for appointment of counsel (Docket 101), Mr. Gard explains he needs a lawyer to be appointed for him because pursuant to his motion to invoke Rule 56(d), (Docket 99 & 105)) it will be necessary for him to

conduct discovery in order to defeat summary judgment based upon qualified immunity. On March 13, 2015, this court granted the defendants' motion for a protective order which explained that until the merits of the qualified immunity claim are decided, it is inappropriate to allow discovery. See Docket No. 75.

The court addresses Mr. Gard's motion to invoke Rule 56(d) in more depth below. Supreme Court precedent is clear, however, that "if the defendant . . . plead[s] the [qualified] immunity defense, the district court should resolve that threshold question *before permitting discovery*." Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (citing Harlow, 457 U.S. at 818) (emphasis added). Only if the plaintiff's claims survive a dispositive motion on the issue of qualified immunity will the plaintiff "be entitled to some discovery." Id. That Mr. Gard persists in his desire to conduct discovery before the defendants' summary judgment motion which is based upon qualified immunity is decided, therefore, is an insufficient reason to grant his fourth motion for appointment of counsel.

In his fifth motion for appointment of counsel (Docket 121) and accompanying affidavit in support (Docket 122), Mr. Gard explains he needs counsel because a "new" policy has recently been implemented at the MDSP which has divested him of his ability to possess copies of case law. Docket 122, ¶¶ 2-8. Mr. Gard explains he is not allowed to possess copies of case law because the case law bears other inmates' names. Id. He explains this "new" policy came to light as follows: another inmate (Mr. Kurtenbach) was helping Mr. Gard with his legal work. Mr. Kurtenbach printed pleadings pertaining to

6

Mr. Gard's case, and a corrections officer observed the other inmate print these pleadings which belonged to Mr. Gard.  Both the other inmate and Mr. Gard were issued disciplinary write-ups because the other inmate possessed Mr. Gard's legal work.  Id. at ¶¶ 2-3.[3]

Mr. Gard asked a Unit Manager (UM) Klimek (not a party to this lawsuit) to define "another inmate's legal work"[4] as that term is used in the policy.  UM Klimek allegedly explained the term meant "anything with any other inmate's name on it."  After hearing this from UM Klimek, Mr. Gard "went to see staff attorney Sonny Walter and handed over all [his] case law that contained another inmate's name, since Unit Manager Klimek stated that [he] cannot possess it    . . ."  Docket 122 at ¶ 5.  Without copies of case law, Mr. Gard explains, he is "unable to investigate or present his claims."  Docket 128.

Mr. Gard has submitted an affidavit from a fellow inmate—Michael Holzer-- (Docket 127) which explains UM Klimek told him that "apparently" Policy 1.3.C.4  Section IV "Procedures" Part 1.A.7 means inmates cannot possess case law if the caption bears the name of another inmate.  Docket 127 at ¶ 9.

The defendants submitted a response (Docket 125) to Mr. Gard's fifth motion to appoint counsel.  The defendants assert that (1) pursuant to SDDOC

---

[3] South Dakota DOC Policy 1.3.C.4  Section IV "Procedures" Part 1.A.7 states "An inmate is not allowed to possess personal property (including legal documents or legal materials) belonging to another inmate."

[4] As explained above, the policy does not actually use the term "another inmate's legal work" but rather "personal property (including legal documents or legal materials) belonging to another inmate."  See Docket 125-2 at p. 2.

Policy 1.3.E.1 inmate **are** allowed to assist one another with their legal work; but (2) pursuant to SDDOC Policy 1.3.C.4, they are **not** allowed to keep each other's personal property, including legal documents or materials, in their possession.  See Docket 125-1 and 125-2 (copies of SDDOC policy 1.3.E.1 and 1.3.C.4, respectively).  The defendants further explain that policy 1.3.C.4 is not a "new" policy, but instead was merely revised in September 2015, as shown by the revision log.  Docket 125-2 at p. 6.  The September 2015 revision did not pertain to Section IV "Procedures" Part 1.A.7.  Id.  Defendants further represent that despite what UM Klimek allegedly told Mr. Gard about his interpretation of the policy, "[t]he copies of 8 case cites per month obtained by [Mr. Gard] obtained by [him] from the staff attorney is not is not property belonging to another inmate simply because another inmate's name appears in the caption/heading.  Under [Mr. Gard's] present interpretation of the policy, an inmate could rarely, if ever, possess 'case law.'  That was never the intent of SDDOC Policy 1.3.C.4."  See Docket 125, p. 3.

The court agrees.  Even assuming the truth of Mr. Gard's claim regarding UM Klimek's less than eloquent attempts to define "legal documents or legal materials belonging to another inmate" as those terms are used in Policy 1.3.C.4, Mr. Gard does **not** claim UM Klimek or anyone else ordered him or any other inmate to disgorge properly obtained copies of published or unpublished case law, or disciplined him or any other inmate for possessing properly obtained copies of published or unpublished case law.  Mr. Gard does **not** claim UM Klimek or anyone else told him he must disgorge properly obtained

8

copies of published or unpublished case law because another inmate's name in the caption or heading rendered the properly obtained case law violative of the policy, or put Mr. Gard at risk of violating the policy.  It is the court's view that Mr. Gard's act of surrendering his properly obtained case law to the staff attorney because of this strained interpretation of the policy defies common sense and constitutes yet another attempt to delay his obligation to submit a timely response to the defendants' motion for summary judgment.

Mr. Gard's fourth and fifth motions for appointment of counsel set forth no new valid facts or grounds for requesting court-appointed counsel. Compare Docket Nos. 14, 63 & 78 to Docket Nos. 101 & 121.  Accordingly, the court denies Mr. Gard's fourth and fifth motions for the appointment of counsel (Docket Nos. 101 & 121).

## B.   Plaintiff's Ex Parte Motion to Turn Over Discovery Material To Staff Attorney (Docket 98)

Mr. Gard has moved the court to allow him to turn over three pairs of socks to the prison staff attorney for delivery to the court for inspection. Mr. Gard asserts it is necessary for the court to inspect these socks for purposes of the pending summary judgment motion.  Mr. Gard explains he has attempted to mail the socks directly to the court as exhibits but has not been allowed to do so.  He believes that if he surrenders custody of the socks to prison officials, the socks "would never be seen again."  Docket 98.

The defendants have explained in writing their positions about Mr. Gard's socks.  The defendants have explained they believed the socks they provided to Mr. Gard were sufficient.  Mr. Gard may likewise explain in writing

9

why he believes the socks were not sufficient and why the insufficiency rose to the level of deliberate indifference.  The court does not discern that physical inspection of the socks long after the fact is a necessary part of the qualified immunity determination.  Mr. Gard's motion for inspection of his socks (Docket 98) is DENIED.

## C. Plaintiff's Motion to Invoke Rule 56(d) to Deny Summary Judgment (Docket No. 99 & 105).[5]

Mr. Gard moves the court to invoke FED. R. CIV. P. 56(d) to deny summary judgment.  FED. R. CIV. P. 56(d) provides:

> **(d)     When Facts Are Unavailable to the Nonmovant.**
> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations to take discovery; or
> (3) issue any other appropriate order.

Usually, summary judgment is proper "only after the nonmovant has had adequate time for discovery." Toben v. Bridgestone Retail Operations, 751 F.3d 888, 894 (8th Cir. 2014)  (citations omitted).  Nonmovants may request a Rule 56(d) continuance "if they otherwise cannot present facts sufficient to justify their opposition.  This option exists to prevent a party from being unfairly thrown out of court by a premature motion for summary judgment." Id. (citations omitted).  A Rule 56(d) continuance is only appropriate, however, if the movant files an affidavit which affirmatively shows how the discovery or

---

[5] Docket No. 99 was filed with a photocopied signature.  Docket No. 105 is identical to Docket No. 99 except it contains Mr. Gard's original signature.

delay he seeks will allow him to rebut the movant's showing that there is an absence of a genuine issue of material fact.  Id.

FED R. CIV. P. 56(d) does not *require* trial courts to allow parties to conduct discovery before entering summary judgment. Anzaldua v. Northeast Ambulance Fire Protection District, 793 F.3d 822, 836 (8th Cir. 2015). (emphasis added).  The district courts possess discretion when presented with a Rule 56(d) motion.  Id.  The court's is discretion is somewhat restricted, however, when the summary judgment motion at issue is based upon qualified immunity.  Id.  This restriction "reflects the concern that insubstantial claims against government officials be resolved prior to discovery and on summary judgment if possible."  Id. (punctuation altered, citation omitted).

When the summary judgment motion pending is based upon qualified immunity, it is not enough for the Rule 56(d) movant to "set forth some facts [he] *hopes* to elicit from further discovery."  Id. at 837 (citations omitted, emphasis added).  Instead, the party making the Rule 56(d) motion must "show that the facts sought *exist*."  Id. (citations omitted, emphasis added).

Further, a court presented with a Rule 56(d) motion must exercise its discretion with an eye toward balancing the movant's demonstrated need for discovery against the burden the discovery will place upon the opposing party. Harbert Int'l. Inc. v. James, 157 F.3d 1271, 1280 (11th Cir. 1998).  "In qualified immunity cases, the Rule 56(d) balancing is done with a thumb on the side of the scale weighing against discovery."  Id.  In Harbert the court cautioned that once a defendant raises the qualified immunity defense, "the

11

trial court must exercise its discretion in a way that protects the substance of the . . . defense.  It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." Id. (citing Crawford-El v. Britton, 523 U.S. at 597- 598).  See also Garner v. City of Ozark, 587 Fed. Appx. 515, 518 (11th Cir. 2014) (affirming district court's denial of plaintiff's Rule 56(d) motion in a qualified immunity case, explaining "the basic thrust of the qualified immunity doctrine is to free officials from the concerns of litigation, including the avoidance of disruptive discovery," (citing Ashcroft v. Iqbal, 556 U.S. 662, 685 (2009))).

Mr. Gard counters the assertions in the defendants' brief, arguing the defendants have acted unfairly by joining a "troubling trend" of seeking to deny plaintiffs in civil rights cases any discovery until they seek summary judgment based on qualified immunity.  See Docket 112.   Mr. Gard cites Sorrells v. City of Dallas, 192 F.R.D. 203 (N.D. Tex. 2000) in support of his Rule 56(d) request.  In that case, the heirs of an arrestee who died from a crushed larynx after his arrest sued the arresting officers and the city.  The heirs alleged the officers violated the arrestee's civil rights by using unlawful force during the arrest. Id. at 206.  The defendants raised the qualified immunity defense and the court stayed discovery until the qualified immunity issue was resolved.  Id.  The plaintiffs sought limited discovery, however under Rule 56(d) in order to discover the circumstances of the arrest. In allowing the discovery, the court stated

> Defendants themselves recognize the importance of the underlying
> historical facts because their pending summary judgment motion

12

> is supported by the affidavits of six police officers who participated
> in the events giving rise to this suit. Yet they vigorously oppose
> plaintiff's efforts to conduct any discovery until the issue of
> qualified immunity is decided.
>
> The absurdity of this scenario should be plain.  The only reason
> the question of qualified immunity is still unresolved is because
> defendants chose not to engage it as a threshold matter.  Instead,
> defendants first raised it in a fact-intensive motion for summary
> judgment.  They now hide behind the shield of qualified immunity
> to deny access to evidence solely within their control while using
> that same evidence against plaintiffs.  Limiting discovery in these
> circumstances is inherently unfair.

Sorrells, 192 F.R.D. at 209.

Mr. Gard compares his case to Sorrells.  Mr. Gard cites the unfairness

her perceives because the defendants in effect, "hold all the cards," the cards in

this case being Mr. Gard's medical and institutional files, and can hand-pick

the records which depict the story the defendants wish to tell rather than the

true story.  Mr. Gard, on the other hand, insists that he does not have free

access to these same records and is at the mercy of the defendants, unable to

tell his side of the story which he believes will defeat the qualified immunity

defense.  He has described the information he seeks, along with an explanation

of who possesses or can provide this information and how it will preclude

summary judgment.  See generally, docket 99 & 105 at pp. 8-13.

Mr. Gard further asserts defendants are in exclusive control of the

information that can make or break his case (primarily his medical records) but

they have denied him access to these records and have provided this court with

only those records that benefit their side of the story.  Mr. Gard also argues

that much of the information provided to the court by the defendants should be

13

disregarded because it constitutes "inadmissible hearsay; at times double and triple hearsay."  Docket 99 & 105, n.1

In Lykken v. Brady, 2008 WL 1930029 (D.S.D, April 30, 2008), the plaintiffs cited Sorrells and argued, as Mr. Gard does, that it was inequitable for the defendants to be allowed to assert qualified immunity, stay discovery, and then file a fact-intensive summary judgment motion.  Id. at *2.  In Lykken, the plaintiffs asked the district court to allow certain discovery before ruling on the summary judgment motion.  Id.  The district court exercised its discretion and allowed some, but not all of the plaintiff's requested discovery.  Id. at *3. The court narrowly tailored the permitted discovery to allow resolution of the plaintiff's allegations, while at the same time—as directed by the United States Supreme Court--protecting the defendants from the burdens of discovery until after the qualified immunity issue was decided.  Id. at * 3.  The court endeavors to do the same here.

In this case Mr. Gard articulates three primary concerns:  (1) the defendants have exclusive control over his medical records; (2) the defendants have selectively presented his medical records to this court to paint a distorted picture of his medical treatment; and (3) the medical records and/or the defendants' affidavits which regurgitate the information contained in the records constitute inadmissible hearsay.

Mr. Gard's final concern is addressed first.  Medical records have long been accepted as a well-recognized exception to the hearsay rule in all types of litigation.  See FED. R. EVID. 803(4).  That rule states:

14

**Rule 803.  Exceptions to the Rule Against Hearsay—Regardless of Whether the Declarant is Available as a Witness.**

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
\*\*

> (4) **Statement Made for Medical Diagnoses or Treatment.**
>    A statement that:
>    (A) is made  for—and is reasonably pertinent to—a medical diagnosis or treatment; and
>    (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause.

See FED. R. EVID. 803(4).  See also  Kuiper v. Givaudan, Inc., 602 F.Supp.2d 1036,1045 (N.D. Iowa 2009) (admitting statements of plaintiff's daughter contained in plaintiff's medical records that his home was "filthy" because statement was pertinent to diagnosing his medical condition).  In Kuiper the medical records were allowed into evidence against the plaintiff's wishes because this interpretation of Rule 803(4) is "widely accepted as a firmly rooted hearsay exception." Id.  "This exception to the hearsay rule is premised on the theory that a statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility." Id. (internal punctuation omitted) (citing White v. Illinois, 502 U.S. 346, 356)(1992)).  See also Eckert v. Bowen, 2013 WL 3884165 (E.D. Mo., July 26, 2013) at *2 (prisoner's objection to institutional medical records as hearsay is overruled where the custodian of the records properly authenticated them). Institutional medical records are regularly relied upon by the federal courts in determining the merits of prisoner deliberate indifference claims.  See e.g., Massey v. Hutto, 545 F.2d 45 (8th Cir. 1976) (per curiam) (referring to Mr. Massey's

15

medical records to describe his medical condition and care and stating "on the basis of these records, we agree with the district court that Mr. Massey has not been the victim of deliberate indifference . . ."). Id. at p. 46. See also Dulany v. Carnahan, 132 F.3d 1243 (8th Cir. 1997). Dulany was also a deliberate indifference case. After summary judgment was granted in favor of the defendants, the plaintiffs appealed, claiming they'd not been given adequate opportunity for discovery. The Eighth Circuit disagreed:

> The defendants voluntarily produced thousands of pages of documents, including the plaintiffs' medical records, the relevant institutional policies, and physician affidavits summarizing the plaintiffs' medical records and opining that the plaintiffs received medically appropriate and adequate care.
> ***
> Further, the record in this case was not inadequate upon which to make a summary judgment determination, because the defendants provided expert affidavits, the relevant prison policies, and all of the plaintiffs' medical records.

Id. at 1238-39.

The inmate's medical records were also relied upon to determine the summary judgment motion in Meuir v. Greene County Jail Employees, 487 F.3d 1115 (8th Cir. 2007). In that case, the prisoner claimed deliberate indifference based upon the treatment he received for his dental problems. Id. at 1118. The district court granted the defendants' motion for summary judgment, and Mr. Meuir appealed. The Eighth Circuit affirmed, noting "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." Id. at 1119 (citing Dulany, 132 F.3d at 1240).

16

Mr. Gard's objection to reliance on his medical records because they contain hearsay is therefore rejected.

Mr. Gard also asserts, however, that he has only been allowed limited access to his medical records and that the defendants have in essence "cherry picked" the records provided to the court in order to provide a distorted picture of his institutional medical care.   To correct this distortion, Mr. Gard asks the court to allow him to depose six of his medical providers, two correctional officers, and the CBM dietician.

Because the defendants have asserted the qualified immunity defense, the court must balance Mr. Gard's need for information versus the burden placed on the defendants, with the "thumb on the side of the scale weighing against discovery." Harbert, 157 F.3d at 1280.   Thus far, however, Mr. Gard has not provided anything other than his own hope that deposing the people he wishes to depose will uncover the existence of facts necessary to defeat the defendants' motion for summary judgment which is based on the qualified immunity doctrine.  Mr. Gard's hope is not enough to justify subjecting the defendants to the burdens of such "disruptive discovery."  Garner, 587 Fed. Appx. at 518; Anzaldua, 793 F.3d at  836.

It is not disruptive, however, for the defendants to provide Mr. Gard a complete hard copy of his institutional medical records, including copies of records from outside medical providers which are in the possession of the DOC. To allow him to properly respond to the defendants' summary judgment

17

motion, Mr. Gard should be allowed to possess these medical records in his cell, not just review them while in the presence of health services personnel.

Toward that end, Mr. Gard's Rule 56(d) motion, Docket Nos. 99 & 105, is GRANTED in part as follows:  the defendants shall, on or before **Thursday, December 31, 2015,** provide Mr. Gard and this court with identical, properly authenticated and complete sets of Mr. Gard's institutional medical records including any copies of medical records from outside medical providers.[6]  The records provided to the court shall be filed under seal.  The balance of Mr. Gard's Rule 56(d) motion is DENIED.

### D.   Plaintiff's Motion to Appoint a Medical Expert and For a Medical Exam (Docket 100 & 106)[7]

Mr. Gard asks the court to appoint a medical expert and order a medical examination pursuant to FED. R. EVID. 706(A) and FED. R. CIV. P. 35.  FED. R. EVID. 706(A) provides authority for the court to appoint an expert witness, while FED. R. CIV. P. 35 provides authority for the court to order an independent medical examinations.

Section 1915 of Title 28 of the United States Code entitles indigent prisoners to bring their legal claims to court without pre-payment of the usual fees.  There is, however, no similar  provision which allows the Court to appoint expert witnesses for the express purpose of  supporting  a *pro se* litigant's claims.  "The plain language of section 1915 does not provide for the

---

[6] Outside medical records may be redacted to exclude references to future medical appointment dates.

[7] Docket 100 did not contain an original signature.  Docket 106 is identical to Docket 100 except it contains an original signature.

appointment of expert witnesses to aid an indigent litigant." Hannah v. United States, 523 F.3d 597, 601 (5th Cir. 2008). See also, Orr v. Valdez, 2011 WL 5239223 at *2 (D. Idaho) (same).

In Orr, the Court noted that § 1915 does not authorize the Court to appoint experts for indigent prisoners. Id. A federal court may appoint an expert witness under FED. R. EVID. 706(a), and allocate the expert's fees among the parties. Id. "However, courts have recognized that, reasonably construed, Rule 706 does not contemplate the appointment of, and compensation for, an expert to aid one of the parties. In other words, the principal purpose of a court-appointed expert is to assist the trier of fact from a position of neutrality, not to serve as an advocate." Id. See also, Victor v. Lawler, 2011 WL 722387 at *1 (M.D. Pa.) (reiterating that the in forma pauperis statute, 28 U.S.C. § 1915, contains no provision authorizing the Court to order the appointment of medical experts for indigent litigants at no cost, gathering cases).

The court's authority to appoint an expert pursuant to FED. R. EVID. 706 is discretionary. Tuttamore v. Allred, 2013 WL 248163 at *1 (D. Colo. Jan. 23, 2013). "The appointment of an expert pursuant to Rule 706 is not intended to further partisan interests of either party, but to aid the Court, through the services of an impartial expert in its assessment of technical issues." Id. In United States Marshals Service v. Means, 741 F.2d 1053, 1059 (8th Cir. 1984), the Eighth Circuit Court of appeals explained a district court may appoint an expert witness to assist the court at the government's expense only in "compelling" circumstances. Id.

FED R. CIV. P. 35 is likewise unavailing to Mr. Gard.  The rule allows the court to order a party whose mental or physical condition is in controversy to submit to a physical or mental examination.  See FED R. CIV. P. 35(a)(1).  The rule also allows for the court to order the party to submit to the examination upon a motion.  See FED R. CIV. P. 35(a)(2))(A).  Courts that have interpreted the rule, however, have determined that it "does not vest the court with the authority to appoint an expert to examine a party wishing an examination of himself.  Rather, under appropriate circumstances, would allow the court to order a party to submit to a physical examination at the request of an opposing party."  Cabrera v. Williams, 2007 WL 2682163 (D. Neb., Sept. 7, 2007) at *2 (citing cases).  See also Cottle v. Nev. Dept. of Corrections, 2013 WL 5773845 (D. Nev. Oct. 24, 2013) at * 2.  In Cottle, the court explained, "[c]ourts faced with this issue have consistently concluded that Rule 35 may not be used by a section 1983 inmate plaintiff to secure either medical treatment for the plaintiff or to obtain expert witness testimony to advocate on the plaintiff's behalf."  Id. at *2 (citing cases).

After the parties complete their briefing on the summary judgment motion on the qualified immunity issue, the court will determine whether, in its discretion, compelling circumstances require appointment of an expert in this case under Fed. R. Evid. 706 to aid the court in assessing any of the issues presented.  In the meantime, Mr. Gard's motion for appointment of an independent medical expert (Docket 100 & 106) is DENIED without prejudice.

20

**E.     Motion to File Second Amended Complaint (Docket 108)**

In his original complaint (Docket 1), Mr. Gard named eight defendants
(Bob Dooley, Susan Jacobs, Muriel Naminga, Andy Gates, Kelly Swanson,
Jenifer Bemboom, John Treweiller, and Barry Schroeter) and alleged two
causes of action (deliberate indifference to serious medical needs and violation
of the Americans with Disabilities Act).   In his amended complaint (Docket 55),
Mr. Gard named the following additional eleven defendants:   Jennifer
Stanwick, Rebecca Scheiffer, Leland Tjeerdsma, Travis Tjeerdsma, Tammy
DeJong, Randy Stevens, Corporal Cropper, Randy Milne, Jessica Luke, DOH
Staff, and unknown CBM Food Services Employees.   Mr. Gard re-stated his
deliberate indifference claims, and added a retaliation claim.   Id.

This court entered a scheduling order in this case nearly one year ago,
on January 16, 2015.   Docket 62.   According to the scheduling order, the
deadline for amending pleadings and adding parties was February 16, 2015.
Id. at ¶ 1.   Mr. Gard now asks the court, after the defendants have moved for
summary judgment, to allow him to add seven new defendants (Jeff Barta,
Josh Klimek, Derek Majers, Vickie Raysby, Diane Romkema, Kelly Tjeerdsma
and Misty Tolsma) alleging that all of them conspired to retaliate against him
for asserting his Constitutional rights by filing and pursuing his various
pending legal claims.

Mr. Gard's motion is filed pursuant to FED. R. CIV. P.   15(d) which allows
service of "supplemental pleading[s], setting out any transaction, occurrence or
event that happened after the date of the pleading to be supplemented."   Rule

21

15(d) "gives trial courts broad discretion to permit a party to serve a supplemental pleading setting forth post-complaint transactions. . . " Walker v. UPS, 240 F.3d 1268, 1278 (10th Cir. 2001).  Authorization should be liberally granted unless good reason exists to deny it, such as prejudice to the defendants.  Id.  "Even so, such motions are addressed to the sound discretion of the trial court."  Id.

In Walker the plaintiff's motion to supplement was denied because it was made too "late in the day".... the defendant's motion for summary judgment was ready for ruling.  Id.  See also,  Fisher v. Oklahoma Department of Corrections, 213 Fed. Appx. 704 (10th Cir. 2007) (unpublished) (same).  In Fisher, the prisoner plaintiff's motion to supplement to add a retaliation claim was denied by the trial court.  Id. at 710.  The Tenth Circuit found no abuse of discretion because at the time the motion to supplement was filed, "the case was ready for disposition on summary judgment on the original claims.  Under these circumstances, we conclude that the district court did not abuse its discretion in denying leave to supplement the pleadings."  Id.

In this case, allowing Mr. Gard's proposed supplement would be even more prejudicial than in Fisher because he wishes to add not only new claims, but also new parties (who would need to be served and file their answers, in addition to the additional briefing required for the pending summary judgment motion) after the deadline for amendments has long passed and after the current defendants have moved for summary judgment based upon qualified immunity.

Finally, in Holsey v. Collins, 90 F.R.D. 122 (D. Md. 1981) the court noted the plaintiff's allegations were "manageable only with an uneconomical expenditure of resources." Id.

> The instant complaint . . . . places an unjustifiable burden on defendants to determine the nature of the claim against them and . . . speculate on what their defenses might be, and  . . . imposes a similar burden on the court to sort out the facts now hidden in a mass of charges, arguments, generalizations and rumors.  [It] violates the rule (F.R. Civ. P. 8) . . . and is subject to dismissal.

Id. at 123-24.  The Holsey court noted another decision where the Fourth Circuit stated:

> [The plaintiff] has deluged this court with literally hundreds of pages of pleadings concerning his appeals.  They have ranged in subject matter from serious assertions  concerning mail tampering and denial of access to legal research materials to such petty complaints as the prison commissary's failure to honor candy manufacturer's discount coupons. . . . [The plaintiff] has persisted in continually supplementing his complaints by adding new and different claims, with absolutely no regard concerning the  status of his cases . . . We do not intend to make light of or in any way belittle [the plaintiff's] attempts to seek redress of grievances.  But [the plaintiff] must realize that federal courts are not ombudsmen to whom state prisoners may turn when they disagree with the normal operations of penal institutions.  42 U.S.C. § 1983 provides a forum solely for the litigation of claims of constitutional magnitude.

Id. at 125.  The court also noted it is inappropriate for a prison inmate to include as "supplements" to his complaint "irrelevant diary-like entries, amounting to almost a daily account of the many petty indignities which attend the unpleasant experience of incarceration." Id. at 128.  The Holsey court allowed the plaintiff twenty days to amend his complaint or have it dismissed. While Mr. Gard has not submitted anything as frivolous as a complaint about candy coupons, the court does find it quite disingenuous that any prisoner

would file an affidavit bringing attention to his persistent flouting of prison rules without repercussion and then claim retaliation when, upon his next violation,  prison officials take disciplinary action.  Likewise, Mr. Gard's eleven-page proposed supplemental complaint which seeks  redress for everything from reprimands for failing to eat his casserole, unfairly being charged with insolence and loitering, to not being allowed to wear sunglasses  approaches the unacceptable "diary-like entries, amounting to almost a daily account of the many petty indignities which attend the unpleasant experience of incarceration." Id. at 128. Mr. Gard will not be allowed to submit any further supplements or amendments.  For all these reasons, Mr. Gard's Rule 15(d) motion to supplement is DENIED.

## F.      Motion for Sanctions (Docket No. 114)

Mr. Gard moves for sanctions pursuant to FED. R. CIV. P. 56(h).  That rule states:

> **(h) Affidavit or Declaration Submitted in Bad Faith.**  If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond, may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result.  An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

In support of this motion Mr. Gard asserts the defendants have submitted "blatantly false affidavits" in support of their motion for summary judgment. Docket 114 at p. 1.  Mr. Gard asks that the following affidavits, submitted in support of the defendants' motion for summary judgment, be stricken from the record:  Misty Tolsma (Docket 88-7); Jenifer Bemboom (Docket 88-1); Randy

Stevens (Docket 88-5) Tammy DeJong (Docket 88-2) and Robert Dooley (Docket 88-3). Mr. Gard also requests sanctions against the defendants and their counsel, and that they be compelled to give him access to his medical records. The defendants oppose the motion. Docket 118. Mr. Gard filed a response to defendants' opposition. Docket 124.

"The court will not impose sanctions under Rule 56(h) unless it is convinced that an affidavit was presented in bad faith or solely for purposes of delay." In re Russell, 2011 WL 1356709 (N.D. Iowa, April 8, 2011) at *2. The First Circuit reversed the imposition of sanctions under the predecessor to Rule 56(h) in Fort Hill Builders, Inc. v. National Grange Mutual, 866 F.2d 11 (1st Cir. 1989). The court referred to the instances in which the imposition of sanctions under the rule is appropriate as "rare." Id. at 16. In those cases, the conduct justifying sanctions has been described as "particularly egregious." Id. The Fort Hill court reversed the imposition of sanctions because - though the affidavits in that case were described as "weak" - they "accurately set forth the perceptions of the defendants and their attorney. That those perceptions were insufficient to create an issue for trial is no reason for awarding Rule 56(g) sanctions . . ." Id. Additionally, "case law makes clear that no sanctions will be imposed under Rule 56(h) unless the court relies on the false affidavit in ruling on the summary judgment motion." Russell, 2011 WL 1356709 at * 2 (citing cases).

The court has not yet ruled on the pending summary judgment motion, so the motion for sanctions is premature. Russell, 2011 WL 1356709 at * 2

25

(citing cases).  Additionally, even if the defendants do not ultimately prevail on their motion for summary judgment, this is not a "rare" instance in which the defendants have engaged in "particularly egregious" behavior.  Fort Hill, 866 F.2d at 16.[8]   For all of these reasons, Mr. Gard's motion for sanctions pursuant to FED. R. CIV. P. 56(h) (Docket No. 114) is DENIED.

## G.    Motion for an Order (Docket No. 116)

Finally, Mr. Gard moves the court, pursuant to FED. R. CIV. P. 56(d)(3) to require the defendants to provide him with all copies of all  Westlaw cases cited in their summary judgment brief.  He asserts he does not have access to Westlaw, and the staff attorney either does not or will not access it for him to provide him copies of the 45 Westlaw cases cited in the defendants' brief. Mr. Gard wishes to "review and quote the same cites as defendants."  Docket 116 at p. 1.  Mr. Gard opines that to allow the defendants to cite Westlaw cases in their brief while Mr. Gard does not have access to Westlaw "creates an unfair advantage for defendants and their attorney."  Id.

---

[8] The court notes, for example, Mr. Gard's allegation that it is improper for Tammy DeJong, one of the named defendants, to have access to his medical records.  This is incorrect.  Mr. Gard has alleged that defendants, including Ms. DeJong, have been deliberately indifferent to his serious medical needs.  First, it is questionable whether Mr. Gard has a constitutionally protected right of privacy in his prison medical records.  See Seaton v. Mayberg, 610 F.3d 530, 534 n. 18 (9th Cir. 2010) (citing cases) ("We join our sister circuits in holding that prisoners do not have a constitutionally protected right of privacy in prison treatment records when the state has a legitimate penological interest in access to them.").  Second, it is well established that if a plaintiff places his or her medical condition at issue, he or she waives the physician/patient privilege, making medical records discoverable under FED. R. CIV. P. 26(b)(1). See Schoffstall v. Henderson, 223 F.3d 818, 823 (8th Cir. 2000).

In Lewis v. Casey, 518 U.S. 343, (1996) the United States Supreme Court explained the Constitution does not require a state to "enable [a] prisoner to discover grievances, and to litigate effectively once in court." Id. at 354.  See also Blevins v. Dobbs, 2009 WL 3123021 (D. Colorado, Sept. 24, 2009).  In Blevins the prisoner plaintiff likewise asked the court for access to federal cases through the Westlaw program.  The district court in Colorado was not receptive.

> The right of access to the courts extends only as far as protecting the inmate's ability to prepare initial pleadings in a civil action regarding his current confinement or in an application for a writ of habeas corpus.  An inmate must satisfy the standing requirement of 'actual injury' by showing that the denial of legal resources hindered his efforts to pursue a non-frivolous claim.

Id.  at * 3.  Though the plaintiff in Blevins did have access to some materials on Westlaw, he did not have access to federal caselaw.  He complained his access to Westlaw was therefore "too limited."  Id. at * 4.  "Based on the Supreme Court's approval of prison programs that are far less generous, the court finds [Mr. Blevin's claim] is legally frivolous."  Id.

The court is capable of finding and reviewing the cases cited by the defendants to determine whether they are applicable to the facts of Mr. Gard's case.  The court will therefore not order the defendants to provide Mr. Gard with copies of Westlaw cases cited in their brief.  In light of the Supreme Court's admonition in Lewis, Mr. Gard's motion is DENIED.

## CONCLUSION and ORDERS

Based on the foregoing law and analysis, the court hereby

ORDERS that Mr. Gard's motion to invoke Rule 56(d) (Docket Nos. 99 & 105) is GRANTED in part as follows:  the defendants shall, on or before **Thursday, December 31, 2015,** provide Mr. Gard and this court with identical, properly authenticated and complete sets of Mr. Gard's institutional medical records including any copies of medical records from outside medical providers.  The outside records may be redacted to remove reference to the date of any future appointments.  The records provided to the court shall be filed under seal.  The balance of Mr. Gard's Rule 56(d) motion is DENIED.

The balance of Mr. Gard's pending motions (Docket Nos. 98, 100, 101, 106, 108, 114, 116 and 121 are DENIED.

Mr. Gard shall submit his response to the defendants' motion for summary judgment on or before **Thursday, January 21st, 2016**.  The defendants shall thereafter submit their reply on or before **Thursday, February 4, 2016.**  No further extensions shall be granted for either party absent a showing of compelling circumstances.

DATED this 23rd day of December, 2015.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge