UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| REX GARD,<br> Plaintiff, <br>vs.<br><br>**BOB DOOLEY**, CHIEF WARDEN, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; **SUSAN JACOBS**, ASSOCIATE WARDEN, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY; **MURIEL NAMINGA**, LAUNDRY SUPERVISOR, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY; **ANDRA GATES**, SUPERVISOR, DOH, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; **KELLY SWANSON**, SUPERVISOR, DOH, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY; **JENIFER BEMBOOM**, CBM FOOD SERVICE, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY; **JOHN TREWIELLAR**, CBM FOOD SERVICE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; **BARRY SCHROETER**, CBM FOOD SERVICE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; **JENIFER STANWICK**, DEPUTY WARDEN, INDIVIDUAL AND OFFICIAL CAPACITY; **REBECCA SCHEIFFER**, ASSOCIATE WARDEN, INDIVIDUAL AND OFFICIAL CAPACITY; **LELAND TJEERDSMA**, MAJOR, INDIVIDUAL AND OFFICIAL CAPACITY; **TRAVIS TJEERDSMA**, UNIT STAFF, INDIVIDUAL AND OFFICIAL CAPACITY; **TAMMY DEJONG**, UNIT STAFF, INDIVIDUAL AND OFFICIAL CAPACITY; **RANDY STEVENS**, PROPERTY OFFICER, | 4:14-CV-04023-LLP<br><br><br><br><br>ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DOCKET NO. 173 |

INDIVIDUAL AND OFFICIAL CAPACITY;
**CORPORAL  CROPPER**, CORPORAL,
INDIVIDUAL AND OFFICIAL CAPACITY;
**RANDY MILNE**, CORRECTIONS
OFFICER, INDIVIDUAL AND OFFICIAL
CAPACITY; **JESSICA LUKE**, OFFICE
STAFF, DOH, INDIVIDUAL AND
OFFICIAL CAPACITY;  DOC STAFF,
UNKNOWN AT THIS TIME, INDIVIDUAL
AND OFFICIAL CAPACITY; AND  CBM
FOOD SERVICES EMPLOYEES,
UNKNOWN AT THIS TIME, INDIVIDUAL
AND OFFICIAL CAPACITY;
                            Defendants.

## INTRODUCTION

This case is before the court on plaintiff Rex Gard's *pro se* amended complaint alleging a claim pursuant to Title II of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12132.  See Docket No. 55.[1]  Currently pending is his motion for an order compelling defendants to provide certain discovery.  See Docket No. 173.  Defendants oppose the motion.  See Docket No. 175.  This matter has been referred to this magistrate judge for determination pursuant to 28 U.S.C. § 636(b) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, district judge.

## FACTS

Mr. Gard alleges he is an insulin-dependent diabetic.  See Docket No. 55 at 2, 4.  Although he never alleges this to be his disability for purposes of the

---

[1] Mr. Gard originally asserted several other claims in his amended complaint, but those claims were all dismissed on defendants' motion for summary judgment.  See Docket Nos. 134 & 149.  The only remaining claim, Mr. Gard's ADA claim, was not made a subject of defendants' motion for summary judgment.  Id.

ADA, the court assumes it to be.  Mr. Gard alleges defendants have failed and refused to provide him proper diabetic socks and a proper diabetic diet.  Id. at 5-8, 9-12.  He alleges the time set aside for him to visit the law library twice per week is at the same time he must report for blood sugar checks and insulin injections, so he misses out on the full time he could otherwise spend in the law library.  Id. at 13.  He alleges his diabetes and medication require him to urinate frequently.  Id. at 12.  He alleges defendants' policies that no visits to the restroom are allowed during prisoner counts and visitation periods are a hardship on him because of his need for frequent urination.  Id. at 12-13.

Mr. Gard seeks injunctive relief requiring defendants "to comply with the Americans with Disabilities Act" in unspecified ways, provide law library time as necessary, proper meals, access to restrooms during all functions and visitation, and to provide all [unspecified] programs and services as required by the ADA and requiring defendants to provide the necessary staff to maintain all programs and services that are scheduled and that plaintiff is entitled to.  Id. at 23.  Mr. Gard also seeks nominal and compensatory damages.  Id.  Finally, Mr. Gard seeks an order withholding all federal funding from the South Dakota Department of Corrections until such time as the SDDOC complies fully with the ADA.  Id. at 24.  Mr. Gard requests punitive damages as well, but such damages are not available under the ADA.  Meagley v. City of Little Rock, 639 F.3d 384, 390 (8th Cir. 2011).

This current motion to compel is the second motion Mr. Gard has filed concerning the same discovery requests.  Mr. Gard served defendants with his

discovery requests on October 26, 2016.  Although defendants requested an extension of time to respond to these requests, Mr. Gard never informed defendants whether he would grant an extension.  He instead filed his first motion to compel.  See Docket No. 167.

The court denied Mr. Gard's first motion to compel for two procedural reasons.  First, Mr. Gard did not comply with the requirement of showing he had made a good-faith effort to resolve the discovery dispute with defendants before filing his motion to compel.  See Docket No. 172.  Second, Mr. Gard raised new substantive objections to the defendants' responses in his reply brief and did not file a copy of defendants' responses.  Id.  Because of this, defendants had no opportunity to respond to the substantive objections and, without having the defendants' responses before it, the court was unable to evaluate whether defendants' responses were adequate.  Id.

Mr. Gard then filed the now-pending motion to compel.  See Docket No. 173.  He has again failed to file a certification that he conferred in good faith with defendants about his substantive objections to defendants' discovery responses.  Id.  He also again failed to provide the court with a copy of defendants' responses.  Id.  The latter omission was cured by defendants—they provided the court with their responses.  See Docket No. 175-1.

## DISCUSSION

**A.    Good-Faith Certification**

Federal Rule of Civil Procedure 37 provides in pertinent part as follows:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

See Fed. R. Civ. P. 37(a)(1).  Similarly, this court's local rules provide as follows:

> A party filing a motion concerning a discovery dispute must file a separate certification describing the good faith efforts of the parties to resolve the dispute.

See DSD LR 37.1.  Mr. Gard has not complied with either of these rules.  He never filed a separate certification of his good faith efforts to resolve this matter without resort to a court motion, nor did he recite what efforts he made in the body of his motion.  See Docket No. 173.

One week *after* filing his motion to compel, Mr. Gard sent a letter addressed to both the court and defendants' counsel.  See Docket No. 174. That document simply reiterated Mr. Gard's demands for the discovery as initially requested.  Id.  This letter also does not satisfy the requirement of conferring in good faith with opposing counsel *before* filing a discovery motion as required by Rule 37 and Local Rule 37.1.

Nor is Mr. Gard's failure excusable.  Although he is a lay person and is representing himself, the court explained at length the requirement of conferring in good faith with the other party to try to informally resolve discovery disputes when the court ruled on Mr. Gard's first motion to compel. See Docket No. 172 at 3-4.  Mr. Gard had this information in his possession

prior to filing the instant motion to compel.  Because Mr. Gard did not comply

with this prerequisite to filing a discovery motion, the court denies his motion.

**B.      Mr. Gard's Motion Fails on the Merits**

In an effort to move this case along, the court also addresses the merits

of Mr. Gard's motion.  Although Mr. Gard served defendants with 21 requests

for the production of documents (see Docket No. 175-1), he outlines only 8

responses from defendants to which he objects.  See Docket No. 173 at 2-4.

The court will address only those 8 objections.

The scope of discovery is set forth in Federal Rule of Civil Procedure 26:

> ***Scope in General.***  Unless otherwise limited by court order, the
> scope of discovery is as follows:  Parties may obtain discovery
> regarding any nonprivileged matter that is relevant to any party's
> claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant
> information, the parties' resources, the importance of the discovery
> in resolving the issues, and whether the burden or expense of the
> proposed discovery out-weighs its likely benefit.  Information
> within this scope of discovery need not be admissible in evidence to
> be discoverable.

See FED. R. CIV. P. 26(b) (emphasis added).

When a party requests discovery and the opposing party objects to

producing the discovery, the burden is on the requesting party to first establish

the relevancy of the discovery requested.    E.E.O.C. v. Woodmen of the World

Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (citing Hofer

v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation

that information might be useful will not suffice; litigants seeking to compel

discovery must describe with a reasonable degree of specificity, the information

6

they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Once the requesting party has made a threshold showing of relevance, the burden shifts to the party resisting discovery to show specific facts demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive.  Penford Corp. v. National Union Fire Ins. Co., 265 F.R.D. 430, 433 (N.D. Iowa 2009); St. Paul Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000).  The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden–that party must make a specific showing of reasons *why* the relevant discovery should not be had.  Cincinnati Ins. Co. v. Fine Home Managers, Inc., 2010 WL 2990118, *1 (E.D. Mo. 2010); Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

Several courts have determined that where the discovery requests are relevant, the fact that answering them will be burdensome and expensive is not in itself a reason for a court's refusing to order discovery which is otherwise appropriate.  See In re Folding Carton Antitrust Litigation, 83 F.R.D. 260, 265 (N.D. Ill. 1979) (stating that "[b]ecause the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive 'is not in itself a reason for refusing to order discovery which is otherwise appropriate' "); Alexander v. Parsons, 75 F.R.D. 536, 539 (W.D. Mich. 1977) (stating that "the mere fact discovery is burdensome . . . is not a sufficient

objection to such discovery, providing the information sought is relevant or may lead to the discovery of admissible evidence"); and Burns, 164 F.R.D. at 593 (determining that the fact that answering interrogatories will require the objecting party to expend considerable time, effort, and expense consulting, reviewing, and analyzing huge volumes of documents and information is an insufficient basis for an objection).  Moreover, if discovery requests are relevant, the fact that they involve work, which may be time consuming, is not sufficient to render them objectionable.  See United States v. Nysco Labs., Inc., 26 F.R.D. 159, 161-62 (E.D.N.Y. 1960)and Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 245 (N.D. W. Va. 1970) (stating that "[i]nterrogatories, otherwise relevant, are not objectionable and oppressive simply on grounds [that] they may cause the answering party work, research and expense").  The court may limit the frequency and extent of discovery.  See FED. R. CIV. P. 26(b)(2); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit.")

### 1.    ADA Law

In order to gauge whether Mr. Gard has met his burden to show the relevance of his discovery requests, it is necessary to understand some basic law regarding his sole remaining claim under Title II of the ADA.  Title II of the ADA prohibits "public entities" from excluding "qualified" disabled persons from programs, activities, or services, or otherwise discriminating against disabled

persons.  See 42 U.S.C. § 12132.[2]  A "qualified individual with a disability"

"means an individual with a disability who, with or without reasonable

modifications to rules, policies, or practices, the removal of architectural,

communication, or transportation barriers, or the provision of auxiliary aids

and services, meets the essential eligibility requirements for the receipt of

services or the participation in programs or activities provided by a public

entity."  See 42 U.S.C. § 12131(2).

The ADA defines "disability" to include any "physical or mental

impairment that substantially limits one or more major life activities."

Richards v. Minnesota, 2016 WL 7007487 *5 (D. Minn. Nov. 29, 2016).  The

regulations promulgated by the Equal Employment Opportunity Commission

(EEOC) define "physical or mental impairment" to include "diabetes."  Id. (citing

28 C.F.R. § 35.104).  Major life activities include eating and the operation of the

digestive system.  Id. (citing 42 U.S.C. § 12102(2)).  Thus, even under the

EEOC regulations, one who has diabetes is not *per se* disabled.  Instead, one

with diabetes has a physical or mental impairment.  One would still need to

show that impairment substantially limits a major life activity.

The Eighth Circuit considers the EEOC's regulations interpreting the

ADA "instructive," but not binding.  Gorman v. Bartch, 152 F.3d 907, 913 (8th

---

[2] Section 12132 provides:  "Subject to the provisions of this subchapter, no
qualified individual with a disability shall, by reason of such disability, be
excluded from participation in or be denied benefits of the services, programs,
or activities of a public entity, or be subjected to discrimination by any such
entity."  See 42 U.S.C. § 12132.

Cir. 1998).[3]  Numerous courts have held that diabetes, even when it requires medication and dietary restrictions, is not necessarily a disability under the ADA.  See Griffin v. United Parcel Serv., Inc., 661 F.3d 216, 223-24 (5th Cir. 2011) (collecting cases); Carreras v. Sajo, Carcia & Partners, 596 F.3d 25, 34 (1st Cir. 2010); Collado v. United Parcel Serv., Co., 419 F.3d 1143, 1156 (11th Cir. 2005);  Montalvo v. Lamy, 139 F. Supp. 3d 597, 611 (W.D.N.Y. 2015).

In Sutton v. United Air Lines, Inc., 527 U.S. 471, 483-84 (1999), the Court, in *dicta*, rejected the idea that diabetes was a disability where the condition could be controlled by monitoring one's blood sugar level and administering insulin.  When diabetes is properly managed, the Court noted it did not substantially limit one's major life activities.  Id.  However, Congress specifically rejected the Court's interpretation of the ADA in Sutton and Toyota[4] when it passed the 2008 ADA Amendments Act (ADAAA), which legislatively

---

[3] In Federal Exp. Corp. v. Holowecki, 552 U.S. 389, 397 (2008), the court said this about the EEOC's regulation interpreting the word "charge" under the Age Discrimination in Employment Act:  "we defer to an agency's reasonable interpretations of the statute when it issues regulations in the first instance," and "the agency is entitled to further deference when it adopts a reasonable interpretation of regulations it has put in force. . . .we accept the agency's position unless it is plainly erroneous or inconsistent with the regulation." (punctuation altered). However, in the subsequent case of Young v. United Parcel Serv., Inc., 575 U.S. ___, 135 S. Ct. 1338, 1351-52 (2015), the Court declined to give "special or controlling weight" to an EEOC guideline concerning pregnancy-related disability because the timing, consistency and thoroughness of the EEOC's consideration of the issue did not invoke the Court's confidence; in particular, the Court was concerned that the guideline reversed—without explanation—a position the government had long advocated for.  The Court concluded it could not "rely significantly" on the EEOC guideline.  Id. at 1352. The Eighth Circuit has described the question of how much deference to give an EEOC regulation defining "disability" an "open question."  Fenney v. Dakota, Minnesota, & Eastern R. Co., 327 F.3d 707, 713-14 (8th Cir. 2003).

[4] Toyota Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184 (2002).

overturned the Supreme Court's previous decisions  in Sutton and Toyota.  See ADAAA of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008) (expressly overturning Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184 (2002); and Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999)).

Congress found the Court's decisions to be "inconsistent with congressional intent, by expressing too high a standard," for ADA plaintiffs to meet.  ADAAA § 2(a)(8).  Congress declared that the holdings in Toyota, Sutton, and other cases "narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect."  Id. § 2(a)(4).  Congress specifically instructed the EEOC to modify its regulations concerning the definitions of "substantially limits a major life activity" and "disability," the two issues interpreted by the Court in Sutton and Toyota.  See Morriss v. BNSF Ry. Co., 817 F.3d 1104, 1110-11 (8th Cir. 2016).  However, Congress did not alter the definition of "physical impairment" and the EEOC regulation concerning this term remained the same as before the enactment of the ADAAA.  Morriss, 817 F.3d at 1111.

A "public entity" under Title II of the ADA is defined in part as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government."[5]  See 42 U.S.C. § 12131(1)(A) and (B).  Although a state and any department of a state are "public entities" under Title II of the ADA (see Klingler v. Director, Dept. of

---

[5] The other part of the definition of "public entity," not relevant here, is "the National Railroad Passenger Corporation, and any commuter authority."  See 42 U.S.C. § 12131(1)(C).

11

Revenue, 433 F.3d 1078, 1080 (8th Cir. 2006)), defendants in their individual capacities do not constitute "public entities" subject to suit under Title II of the ADA.

Congress' designation of liability for "public entities" under Title II of the ADA necessarily implies that there is no liability for individuals under that statute.  See Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (*en banc*) (citing Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979)).  But, a plaintiff may assert a Title II claim for injunctive relief against a state employee in his or her official capacity.  The Eleventh Amendment does not bar the granting of injunctive relief.  Missouri Child Care Assn. v. Cross, 294 F.3d 1034, 1037 (8th Cir. 2002); Bradley v. Arkansas Dept. of Educ., 189 F.3d 745, 753 (8th Cir. 1999), rev'd in part, Jim C. v. Arkansas Dept. of Educ., 235 F.3d 1079 (8th Cir. 2000).

To state a *prima facie* claim under Title II of the ADA, a plaintiff must show (1) he is a qualified individual with a disability, (2) he was denied the benefits of a public entity's service or program, or otherwise discriminated against; and (3) the denial or discrimination was based on his disability. Folkerts v. City of Waverly, Iowa, 707 F.3d 975, 983 (8th Cir. 2013); Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999).  Once a plaintiff has demonstrated a *prima facie* case, defendants may assert an affirmative defense that the requested accommodation would be an undue burden.  Mason v. Correctional Medical Servs., Inc., 559 F.3d 880, 886 (8th Cir. 2009); Randolph, 170 F.3d at 858 (citing Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998)).

12

"Terms like 'reasonable' and 'undue' are relative to circumstances, and the circumstances of a prison are different from those of a school, an office, or a factory . . . " Crawford v. Indiana Dept. of Corrections, 115 F.3d 481, 487 (7th Cir. 1997), abrogated on other grounds, Erickson v. Bd. of Governors of State Colleges, 207 F.3d 945 (7th Cir. 2000).  In the prison context, whether the requested accommodation poses a safety or security concern is relevant to the undue burden inquiry.  Randolph, 170 F.3d at 858 (citing Duffy v. Riveland, 98 F.3d 447, 456 (9th Cir. 1996)); Onishea v. Hopper, 171 F.3d 1289, 1300 (11th Cir. 1999) (en banc).  Cost is also a legitimate penological concern.  Onishea, 171 F.3d at 1300.  In general, although the Turner[6] analysis does not supplant the ADA statutory analysis, the Turner legitimate penological factors come into play in determining whether the accommodation is reasonable or an undue burden.  Id.

Defendant CBM Food Services may not be a "public entity" as defined by Title II of the ADA.  See Johnson v. Neiman, 504 Fed. Appx. 543 *2 (8th Cir. May 6, 2013) (per curiam) (citing Edison v. Douberly, 604 F.3d 1307, 1310 (11th Cir. 2010)); Dinkins v. Correctional Medical Services, 743 F.3d at 633,

---

[6] Turner v. Safley, 482 U.S. 78 (1987).  Turner outlines four factors to determine whether the prison policy or regulation is reasonably related to a legitimate penological interest: (1) is there a valid rational connection between the regulation and the governmental interest justifying it; (2) is there an alternative means available to the inmate to exercise the right; (3) would the accommodation have a significant ripple effect on the guards, other inmates, and prison resources; and (4) is there an alternative that fully accommodates the prisoner at de minimis cost to valid penological interests.  Id. at 90-91.

634-35 (8th Cir. 2014) (*per curiam*).  Neither party has briefed this issue to the court, but the Second and Eleventh Circuits have issued decisions cited favorably by the Eighth Circuit holding that even when a private company contracts with a government to perform traditional and essential governmental functions, it remains a private company and not a "public entity" under Title II of the ADA.  Edison, 604 F.3d at 1309-10 (citing Green v. New York, 465 F.3d 65, 79 (2d Cir. 2006)).  Numerous district courts in the Eighth Circuit have so held.  See, e.g. Hahn v. Linn County, 191 F. Supp. 2d 1051, 1055 n.2 (N.D. Iowa 2000); O'Connor v. Metro Ride, Inc., 87 F. Supp. 2d 894, 900 (D. Minn. 2000).

Disabled individuals are entitled to receive "meaningful access" to "a public entity's services, not merely limited participation."  Loye v. County of Dakota, 625 F.3d 494, 496 (8th Cir. 2010) (quoting Randolph, 170 F.3d at 858).  An ADA plaintiff must prove the agency's discrimination was intentional in order to obtain compensatory damages; no showing of intent is necessary for injunctive or declaratory relief.  Meagley, 639 F.3d at 389.  Discriminatory intent is demonstrated by showing the agency was deliberately indifferent "to the strong likelihood that . . . its questioned policies will likely result in a violation of federally protected rights."  Id. (quoting Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d 1222, 1228-29 (10th Cir. 2009)).  As indicated above, punitive damages are not available under Title II of the ADA.  Meagley, 639 F.3d at 390.

Claims based on medical treatment decisions, including claims that a defendant failed to properly diagnose or treat a condition, cannot form the basis of an ADA claim under Title II.  Dinkins 743 F.3d at 634; Burger v. Bloomberg, 418 F.3d 882, 883 (8th Cir. 2005) (*per curiam*).  However, claims that meals, medical services, and adequate housing were denied based on a plaintiff's disability *can* form the basis for viable Title II ADA claims.  Dinkins, 743 F.3d at 634-35 (citing Pa. Dept. of Corr. V. Yeskey, 524 U.S. 206, 210 (1998); Jaros v. Ill. Dept. of Corr., 684 F.3d 667, 672 (7th Cir. 2012)).

### 2.   Request for Production No. 2[7]

Mr. Gard's request for production (RFP) number 2 states as follows:

> Any and all medical notes, e-mails, memos, informationals, between medical staff and unit staff or security staff, which refer to Plaintiff, Rex Gard.

Defendants object to RFP No. 2 because they previously provided to Mr. Gard 2,912 pages of double-sided copies consisting of the entirety of Mr. Gard's medical records.  See Docket No. 175-1 at 5.  Furthermore, defendants object on the basis that Mr. Gard may, upon request, and has in the past, reviewed his medical records.  Id. at 6.  Therefore, defendants argue

---

[7] Mr. Gard has confused the record by renumbering his requests for documents in his currently-pending motion to compel.  By examining the original requests, see Docket No. 170-1, and comparing it with defendants' responses thereto, see Docket No. 175-1, and then comparing those two documents to the wording of the discovery request discussed in Mr. Gard's current motion to compel, see Docket No. 173 at 2-4, the court discerned the true original number of each discovery request.  Thus, the request Mr. Gard identifies as "1" in his motion, is really Request for Production of Documents No. 2.  Compare Docket No. 173 at p. 2, with Docket No. 170-1 at p. 1 and Docket No. 175-1 at p. 5.  To avoid further confusion, the court addresses each of the 8 discovery requests at issue herein by their original request number as propounded in Mr. Gard's request for the discovery of documents.

Mr. Gard's request is cumulative, duplicative, unduly burdensome and unnecessary.  Id.  Furthermore, defendants assert the burden and expense of providing these requested documents outweighs any marginal additional benefit to be gained by Mr. Gard.  Id.

Mr. Gard's only defense of this request is his assertion that the request will show that staff are aware of the violations of the ADA and do nothing to stop the violations or improve their implementation.  Mr. Gard's request is not limited to "notes, e-mails, memos, informationals" dealing only with the ADA. The request is also not limited to only his ADA claims herein—the issues of socks, visitation, law library use, counts, and his diet.  For that reason, his request overbroad.  Furthermore, Mr. Gard does not recite whether the voluminous nearly 6,000 pages of medical records he has already received from defendants includes the "notes, e-mails, memos, informationals" requested in RFP No. 2.

The court concludes Mr. Gard has failed to demonstrate the relevance of this discovery request as is his initial burden.  For that reason, the court denies Mr. Gard's motion to compel as to RFP No. 2.

### 3.    Request for Production No. 3

Mr. Gard's RFP No. 3 states as follows:

> Any and all policies or rules, written or customary, formal or informal, public or private, that refer to the ADA or that contain reference to, or make exceptions to the rules, for the implementation of, or compliance with the ADA, from January 1, 2010, to present.

16

Defendants did not object to RFP No. 3.  Instead, they responded that, to counsel's knowledge, there are no documents responsive to this request.  See Docket No. 175-1 at 6.  The court will not order defendants to produce documents that do not exist.  Mr. Gard's motion to compel as to RFP No. 3 is therefore denied.

### 4.     Request for Production of Documents No. 4

Mr. Gard's RFP No. 4 states as follows:

> Any and all notes, informationals, memos, e-mails, or communications between CBM Food Services employees, the CBM Dietician, and medical staff, DOC Security Staff, and DOC Unit Staff and Administration, that refer to Rex Gard, or diabetic diets, from January 1, 2010, to present.

Defendants object to RFP No. 4 because, among other reasons, it is not relevant.  See Docket No. 175-1 at 7.  Mr. Gard offers no rationale at all in support of this request.  See Docket No. 173 at 2.  Because he does not address this request, Mr. Gard has not carried his burden to show the threshold relevance necessary to entitle him to the discovery.  Furthermore, given the above law regarding the probability that CBM is not properly named as a defendant under Title II of the ADA, the court denies Mr. Gard's motion to compel as to RFP No. 4.

### 5.     Request for Production of Documents No. 5

Mr. Gard's RFP No. 5 states as follows:

> A copy of all CBM Food Service menus that contain diabetic menus from January 1, 2010, to present.

Defendants object to RFP No. 5 because producing the documents would be unduly burdensome, oppressive, and would produce too much interference

with prison administration.  See Docket No. 175-1 at 8.  Mr. Gard states he

wants the requested menus to show he was "prescribed a diabetic diet, but

none was provided for him."  See Docket No. 173.

Neither party illuminates this issue for the court.  How often are CBM

menus generated:  daily? weekly? monthly?  Also, does CBM generate separate

menus for specialty diets among inmates such as diabetic, kosher, halal,

vegetarian, heart-healthy?  Even if such menus exist, how would they show

that Mr. Gard never received food consistent with a diabetes diagnosis?

Mr. Gard has not shown the relevancy of the documents he requests.  Since

that is the first stage of the analysis, and the analysis fails at that stage, the

court does not rule on the obviously conclusory nature of defendants'

objection.  The motion to compel RFP No. 5 is denied.

### 6.    Request for Production of Documents No. 6

Mr. Gard's RFP No. 6 states as follows:

A copy of the work schedule that details the CBM Food Services
employee(s) that were/are responsible for the preparation and
service of any and all diabetic meals, from January 1, 2010, to
present.[8]

Defendants object to RFP No. 6 because, among other reasons, it is not

relevant.  See Docket No. 175-1 at 8.  Mr. Gard argues that production of these

work schedules will show that the diabetic menu was never implemented and

---

[8] The language of the original RFP (see Docket No. 170-1 at 2), is different from
the language Mr. Gard represents in his motion to compel (see Docket No. 173
at 3).  The court recites the original language of the discovery request because
that was what was served on defendants and it is that request to which
defendants' response is made.

that CBM never implemented the ADA.  See Docket No. 173 at 3.  Given the

above law regarding the probability that CBM is not properly named as a

defendant under Title II of the ADA, the court agrees that Mr. Gard has not

articulated the necessary threshold relevance to grant this discovery.

Accordingly, the court denies Mr. Gard's motion to compel as to RFP No. 6.

### 7.    Request for Production No. 7

Mr. Gard's RFP No. 7 states as follows:

> A copy of any and all policies and procedures and unit rules that
> concern recreation for disabled inmates, along with a recreation
> schedule (availability) for disabled inmates, from January 1, 2010,
> to present.[9]

Defendants did not object to RFP No. 7.  Instead, they responded that there are

no documents responsive to this request that have been in existence since

October, 2013.  See Docket No. 175-1 at 8.  Defendants provided the policy

which existed prior to October, 2013.  Id.  The court cannot order defendants

to produce documents that do not exist nor to create documents where none

exist.  Accordingly, the court denies Mr. Gard's RFP No. 7.

### 8.    Request for the Production of Documents No. 10

Mr. Gard's RFP No. 10 states as follows:

> A copy of any and all policies or rules written or customary, that
> concern restroom use for inmates, as it applies to religious
> functions, inmate visit room, inmate library, inmate living areas
> including count time, and the medical waiting room.

---

[9] Again, Mr. Gard in his motion to compel does not recite the original language
of the RFP.  The court analyzes the issue based on the language of the actual
RFP that Mr. Gard served on defendants.

Defendants identified three documents dealing with policies as to inmate visits and inmate counts and provided these to Mr. Gard.  <u>See</u> Docket Nos. 175-1 at 9, 173 at 3.  Defendants also indicated there are various other written policies having to do with inmate movements and count procedures which are designed to ensure round the clock accountability for each inmate.  <u>See</u> Docket No. 175-1 at 9.  These latter policies are designed to ensure security at the prison and defendants refuse to produce them without a court order.  <u>Id.</u>

Mr. Gard argues none of the documents he received address restroom use by inmates.  <u>See</u> Docket No. 173 at 3.  Mr. Gard does not address defendants' position that it would pose a security risk to disclose the additional policies regarding inmate movements and inmate counts.

The court will not require disclosure of documents that potentially could pose a security risk for the prison without some showing by Mr. Gard that such documents are relevant—i.e. do the documents even address restroom use?—and that there is no other way to obtain the discovery.  Other methods of discovery would likely give Mr. Gard the information he seeks.  For example, Mr. Gard could serve defendants with an interrogatory that would have to be signed under oath.  That interrogatory could ask defendants to describe their policy for restroom use during visitation and count, the two areas identified by Mr. Gard in his complaint.  Presumably, merely stating whether an inmate will or will not be allowed to use the restroom during these times would not cause defendants to reveal confidential policies relative to prison security.

Because Mr. Gard never addresses defendants' asserted security reasons for not providing the discovery, and because the court believes the discovery can be obtained through other means that do not pose a security risk, the motion to compel RFP No. 10 is denied.

### 9.    Request for the Production of Documents No. 20

Mr. Gard's RFP No. 20 states as follows:

> A listing of all legal materials that concern the ADA, its implementation or authority, and their whereabouts in the law library.

Defendants did not object to this RFP.  Instead, defendants responded that there are no legal materials specifically addressing the ADA in the law library. See Docket No. 175-1 at 13-14.  Defendants note that additional legal authority may be requested by inmates through the legal assistance attorney and paralegal.  Id. at 14.  The court cannot order defendants to produce documents that do not exist.  Nor can the court order defendants, through a discovery order, to stock materials in its law library that are not currently there. Mr. Gard has his answer.  There is nothing to compel.  Accordingly, the court denies Mr. Gard's motion to compel as to RFP No. 20.

### CONCLUSION

Based on the foregoing facts, law and analysis, it is hereby

ORDERED that plaintiff Rex Gard's second motion to compel [Docket No. 173] is denied.

21

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED February 28, 2017.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge